2014 ND 147

James HIGGINBOTHAM, Appellant

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee**

and

**Industrial Contractors, Inc., Respondent.**

No. 20140019.

Supreme Court of North Dakota.

July 17, 2014.

Rehearing Denied July 31, 2014.

234

Stephen D. Little, Gateway Office Building, Bismarck, ND, for appellant.

Douglas W. Gigler, Special Assistant Attorney General, Fargo, ND, for appellee.

Lawrence E. King (appeared), Bismarck, ND, for respondent.

KAPSNER, Justice.

[¶ 1]   James E. Higginbotham appeals a district court order for judgment and judgment and a district court order affirming an administrative law judge's ("ALJ") decision, which affirmed a Workforce Safety and Insurance ("WSI") order approving a rehabilitation plan and denying further disability benefits.  We conclude the administrative order is in accordance with the law, and we affirm the district court judgment.

I

[¶ 2]   Higginbotham, age 70, was employed by Industrial Contractors, Inc. ("ICI") as a welder and pipefitter in May 2010 when he sustained an injury to his left rotator cuff.  The medical records demonstrated that Higginbotham's injury arose out of and in the course of his work for ICI. Prior to his injury, Higginbotham made $34.61 per hour, but only worked part time.  He often traveled to work sites some distance from his home near Hazen, North Dakota, including a site north of Mandan.  Since his injury, Higginbotham is no longer able to make the trip from Hazen to Bismarck without stopping, and he can no longer perform welding or pipefitting work.

[¶ 3]   Higginbotham obtained a GED in 1970 and reached the level of Sargent in the United States Marine Corps.  He later attended welding school and became a certified welder; he is also a gun smith. He worked as a pipefitter in the energy industry for thirty years, until his injury. Higginbotham owns and lives in a mobile home near Hazen, approximately 70 miles from Bismarck and 80 miles from Minot. Higginbotham lives with his wife, who is a manager at Alco.  Prior to his injury, Higginbotham purchased a pickup truck, and a full tank of gas cost $52.  He indicated he was having difficulty paying bills,

which he did not have before the injury, and he wanted to maintain the lifestyle he had prior to his injury.

[¶ 4] Following left rotator cuff surgery, WSI referred Higginbotham to vocational rehabilitation with Kim Hornberger, a vocational rehabilitation consultant, who identified the first appropriate rehabilitation option for Higginbotham and developed a vocational consultant's report ("VCR"). The VCR concluded that option f-return to an occupation in the statewide job pool which is suited to Higginbotham's education, experience, and marketable skills-was the appropriate option. The jobs identified were cashier, telephone sales representative, gaming dealer, and greeter, and the expected income of $332 per week exceeded 90% of Higginbotham's pre-injury income of $227 per week.

[¶ 5] WSI approved the vocational plan and notified Higginbotham that it intended to discontinue his benefits. Higginbotham requested reconsideration of WSI's decision, and WSI issued an order affirming the rehabilitation plan and denying further disability benefits. Higginbotham appealed, and an ALJ affirmed the WSI order. Higginbotham appealed the ALJ's decision, and the district court affirmed. Higginbotham now appeals the district court judgment.

## II

[¶ 6] This Court exercises limited appellate review of administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Bishop v. Workforce Safety & Ins.*, 2012 ND 217, ¶ 5, 823 N.W.2d 257. On appeal, we are reviewing the decision of the administrative agency, and this Court, like the district court, must affirm an administrative agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. §§ 28–32–46; 28–32–49.

[¶ 7] When an ALJ issues findings of fact, conclusions of law, and order, this Court recognizes the ALJ was in a better position to observe and assess the credibility of witnesses and resolve conflicts in evidence, and will therefore apply the same deferential standard of review to the ALJ's factual findings as used for agency decisions. *Bishop,* 2012 ND 217, ¶ 6, 823 N.W.2d 257. With respect to an ALJ's findings of fact, this Court "do[es] not make independent findings or substitute [its] judgment for that of the ALJ, but determine[s] only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." *Id.* (citations omitted). Questions of law, on the other hand, are fully reviewable on appeal. *Id.*

## III

[¶ 8] On appeal, Higginbotham argues WSI did not meet its burden of identifying the first appropriate rehabilitation plan. This Court explained the purpose of vocational rehabilitation in *Bishop:*

> Vocational rehabilitation for injured workers is governed by N.D.C.C. ch. 65–05.1, and the purpose of those services is to return the injured worker to gainful employment:
>
>> It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. "Substantial gainful employment" means bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, functional capacities, education, previous occupation, experience, and transferable skills . . . .
>
> A rehabilitation plan is appropriate if it meets the requirements of N.D.C.C. ch. 65–05.1 and gives the injured worker a reasonable opportunity to obtain substantial gainful employment. WSI has the burden to establish that a vocational rehabilitation plan is appropriate. Under this Court's standard of review, WSI's selection of a vocational rehabilitation plan will not be reversed when there is evidence from which a reasoning mind could have reasonably concluded that the rehabilitation plan would return [the injured worker] to substantial gainful employment which was reasonably attainable in light of his injury and which would substantially rehabilitate his earning capacity.
>
> The legislature intended for injured workers to be provided with actual rehabilitation, with a realistic opportunity to return to work, and not merely a theoretical rehabilitation on paper. WSI

therefore must consider all of the claimant's functional limitations when determining whether the employment options identified in the rehabilitation plan present a realistic opportunity for substantial gainful employment . . . .

2012 ND 217, ¶¶ 8–9, 823 N.W.2d 257 (citations and internal quotation marks omitted). Under N.D.C.C. § 65–05.1–01(4):

> The first appropriate option among the following, calculated to return the employee to substantial gainful employment, must be chosen for the employee:
>
> a. Return to the same position.
>
> b. Return to the same occupation, any employer.
>
> c. Return to a modified position.
>
> d. Return to a modified or alternative occupation, any employer.
>
> e. Return to an occupation within the local job pool of the locale in which the claimant was living at the date of injury or of the employee's current address which is suited to the employee's education, experience, and marketable skills.
>
> f. Return to an occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills.
>
> g. Retraining of one hundred four weeks or less.

[¶ 9] In this case, the VCR identified option f—"[r]eturn to an occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills"—as the first appropriate option for Higginbotham. Higginbotham indicates that he is appealing several of the ALJ's findings of fact and conclusions of law; however, his arguments can be categorized as challenges to whether the rehabilitation plan was "appropriate," under N.D.C.C. § 65–05.1–01(4). He argues that Hornberger, who

prepared the VCR, was not an expert and that no expert was consulted. He argues there was no evidence of any labor market, and there was no evidence that the rehabilitation plan was practical or affordable. He argues Hornberger failed to consider his wife's ability to replace her wages if forced to relocate. He argues there was no evidence he could learn the skills necessary for the jobs identified in the VCR. He argues WSI's order was not predicated on his earning capacity, as established by an expert. He argues the VCR did not consider his preexisting conditions, his long but narrow work history, or the fact that he could not afford to commute or relocate.

### A

[¶ 10] Higginbotham argues that WSI's order had to be legally predicated on his earning capacity, as established by an expert. He relies on N.D.C.C. § 65–05–10(3), which states "[t]he employee's earnings capacity may be established by expert vocational evidence of a capacity to earn in the statewide job pool where the worker lives." However, Higginbotham misapplies this statute. N.D.C.C. § 65–05–10(3) relates to partial disability benefits, which apply when none of the rehabilitation options under N.D.C.C. § 65–05.1–01(4) are viable. *See Tverberg v. Workforce Safety & Ins.*, 2006 ND 229, ¶ 14, 723 N.W.2d 676; N.D.C.C. § 65–05.1–01(6). In this case, Higginbotham was given a presumably viable rehabilitation option under N.D.C.C. § 65–05.1–01(4)(f). Therefore, N.D.C.C. § 65–05–10(3) does not apply, and this argument is meritless. Higginbotham makes no other challenge to the VCR's earning calculations.

### B

[¶ 11] Likewise, Higginbotham's arguments concerning relocation are based on inapplicable caselaw. Higginbotham argues that commuting or relocation would be too expensive for him and his wife. In support of this argument, Higginbotham relies on *Lawrence v. N.D. Workers Comp. Bureau*, 2000 ND 60, 608 N.W.2d 254. However, *Lawrence* concerned an injured worker who refused employment. *Id.* at ¶¶ 2, 5. In this case, Higginbotham has not yet searched for or been offered employment. The ALJ noted:

[W]hether Mr. Higginbotham will or will not be able to afford to take a job because of its location is also not decided. Though there is case law that would support an argument that an injured worker can refuse to take a job under circumstances that would cause a reasonably prudent person to refuse to do so, Mr. Higginbotham has not yet been offered a position. *See, e.g., Lawrence v. N.D. Workers' Comp.*, 2000 ND 60, 608 N.W.2d 254. (Injured worker justified in refusing a job if "a reasonably prudent person would refuse the offer under the same or similar circumstances." ¶ 27.) It may be that with a good faith work search Mr. Higginbotham will find a job that does not involve the travel he is concerned about. Until that fact situation is presented however, it would only be speculative for me to make a determination that there is no possible circumstance where Mr. Higginbotham would find a suitable job in a suitable location.

Because Higginbotham has not yet searched for or been offered employment, it would be speculative for this Court to determine whether a potential commute or relocation is unreasonably expensive or whether other factors would make a job refusal prudent under the *Lawrence* standard. *Lawrence* does not govern this case. Higginbotham's arguments concerning the cost of relocating or commuting are not yet ripe for review, and we dismiss this

claim. *See Sposato v. Sposato,* 1997 ND 207, ¶ 12, 570 N.W.2d 212 ("An issue is not ripe for review if it depends on future contingencies which, although they might occur, necessarily may not, thus making addressing the question premature.").

## C

[¶ 12] Higginbotham argues his preexisting conditions were not taken into account when developing his vocational rehabilitation plan. According to Higginbotham's testimony at the administrative hearing, prior to his left shoulder injury, Higginbotham had a right shoulder rotator cuff tear, degenerative disc disease, degenerative joint disease, was hit by shrapnel while serving in the military, has coronary artery disease with the insertion of a stent in 2008, was diagnosed with Post–Traumatic Stress Disorder ("PTSD"), and had a PTSD-related incident in 1989. This Court has held "functional limitations which existed at the time the claimant was performing the job are elements of the employee as the employer 'found' him, and are valid factors which should be taken into consideration when the Bureau determines whether certain employment options present an opportunity for 'substantial gainful employment.'" *Svedberg v. N.D. Workers Comp. Bureau,* 1999 ND 181, ¶ 14, 599 N.W.2d 323 (citation omitted). Therefore, "[w]hen the work-related injury makes return to the same job or occupation impossible, and the focus of rehabilitation turns to transferable skills and other occupations, common sense dictates that the worker's actual functional abilities must be considered if the vocational rehabilitation plan is to be meaningful." *Id.* at ¶ 17.

[¶ 13] In this case, a Functional Capacity Evaluation ("FCE") was performed, which evaluated Higginbotham's physical limitations for returning to work. This FCE was relied on in the VCR when developing the vocational rehabilitation plan. Hornberger also testified that she took Mr. Higginbotham's heart condition into consideration when preparing the VCR. With respect to PTSD, there is no evidence in the record, aside from statements made by Higginbotham at the administrative hearing, to prove Higginbotham was diagnosed with PTSD. The record shows Higginbotham had multiple opportunities to detail his preexisting conditions but failed to give a complete account of his preexisting conditions. Thus, there was no evidence Higginbotham suffered from PTSD at the time of WSI's development of the vocational rehabilitation plan. Based on the record, a reasoning mind could have found, as the ALJ did, that Higginbotham's documented preexisting conditions were taken into account in developing his vocational rehabilitation plan.

## D

[¶ 14] Higginbotham cites no sources to support the remainder of his arguments. This Court does not consider issues which are not "adequately articulated, supported, and briefed." *State v. Haibeck,* 2006 ND 100, ¶ 9, 714 N.W.2d 52 (citing *State v. Holzer,* 2003 ND 19, ¶ 15, 656 N.W.2d 686). The VCR made detailed findings with respect to the vocational rehabilitation plan, and the ALJ relied on the VCR and hearing testimony in reaching its decision. The ALJ's findings of fact are supported by a preponderance of the evidence, the conclusions of law are supported by the findings of fact, and the order is in accordance with the law.

## IV

[¶ 15] We affirm the district court judgment.

[¶16]   GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.