2017 ND 210

**Marqus WELCH, Appellant and Cross–Appellee**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee and Cross–Appellant**

and

**Stern Drywall, Inc., Respondent**

No. 20160316

Supreme Court of North Dakota.

Filed 8/29/2017

Stephen D. Little, Bismarck, ND, for appellant and cross-appellee.

Mitchell D. Armstrong, Special Assistant Attorney General, Bismarck, ND, for appellee and cross-appellant.

Kapsner, Surrogate Judge.

[¶ 1] Marqus Welch appeals and Workforce Safety and Insurance ("WSI") cross-appeals from a judgment affirming an administrative law judge's ("ALJ") decision that affirmed a WSI order ending Welch's vocational rehabilitation benefits and disability benefits and that reversed a WSI order finding Welch committed fraud and requiring him to repay benefits. We conclude the ALJ did not err in affirming WSI's disability benefits order because a reasoning mind could reasonably conclude Welch could return to work. We conclude, however, the ALJ misapplied the law in failing to apply the proper definition of "work" and in analyzing whether Welch had "willfully" made false statements. We affirm in part, reverse in part, and remand to WSI for further proceedings.

I

[¶ 2] In April 2013, Welch sustained an injury to his left knee when he slipped and fell while working on a roof for Stern Drywall, Inc., as a journeyman carpenter. WSI accepted his claim and paid him disability and medical benefits. Welch received disability benefits continuously from April 2013 through July 2014. He underwent surgery in June 2013 for a torn meniscus and had physical therapy on an ongoing basis.

[¶ 3] While receiving disability benefits, Welch was required to report work activities and income to WSI on injured worker status reports, also known as form FL214.

The status reports Welch submitted from June 2013 through August 2014, with one exception, indicated that he had not done any type of work, whether for pay or not, and that he had not received money from any source other than WSI. On one report form, signed and dated April 3, 2014, where Welch had answered "yes," a WSI claims adjuster testified that she spoke with him on that date and Welch indicated to the adjuster he had made an error by checking "yes" and had not worked since his injury.

[¶ 4] In summer and fall 2013, Welch submitted multiple FL214 forms indicating he had received no money and performed no work activity. During this time, however, Welch formed MDW Construction in North Dakota and began offering services under that name. On July 28, 2013, Welch signed a document providing a bid for services from MDW Construction to Quest Development to perform subcontractor work. On July 30, 2013, Welch opened a bank account for MDW Construction, listing Marqus Welch as sole proprietor. He also registered the business's trade name with the secretary of state. Welch was the only authorized signatory on the bank account.

[¶ 5] In WSI's subsequent fraud investigation, WSI discovered MDW Construction, through Welch, had received and deposited payments totaling over $10,000 in August and September 2013 for work performed for Quest Development and for Oahu Restaurant. Welch had endorsed checks for deposit into the MDW Construction account. There was conflicting testimony at the administrative hearing, however, on the extent of Welch's involvement on the projects. Welch testified that his brother was living with him at the time and did the work on the projects with some assistance from him. He testified his brother received the money from the pro-

jects and had access to those funds with a debit card.

[¶ 6] In January 2014, Welch again had surgery on his knee, after which he continued to treat with his orthopedic surgeon's office and remained on restrictions. Welch attended physical therapy in Arkansas. On June 24, 2014, Welch was seen by Dr. Joel Blanchard at Sanford Health Occupational Medicine. Dr. Blanchard's note includes a detailed history and physical examination, and he indicates Welch had reached maximum medical improvement: "MMI reached. May need fitness for duty testing prior to return to work at your company's discretion. Additional time was spent reviewing the workability testing. Workability testing has been reviewed in full and work status was guided by these findings. I discussed job duties with the patient." Dr. Blanchard's note states Welch's recommended work status was "Regular Duty" and does not indicate any physical restrictions.

[¶ 7] In July 2014, Welch was again treated by Dr. Blanchard. Dr. Blanchard's note states: "I discussed with Marqus, that his examination is unchanged. He does have some disuse atrophy and he will have pain as he starts to use his leg. He is encouraged to go to work. I feel he is safe to return to work based on my exam today and the workability he had last visit." Welch's recommended work status continued to be regular duty. On August 28, 2014, WSI also issued a vocational case manager's report that concluded the first appropriate rehabilitation was return to the same occupation, any employer, based on his release to return to regular duty. Welch again treated with Dr. Blanchard on August 29 and September 5, 2014, and Dr. Blanchard again opined on both dates that Welch's work status was regular duty and noted Welch was referred for a second opinion.

[¶ 8] On September 15, 2014, Welch received a second opinion from Dr. David O'Regan, who opined that Welch had reached MMI and was released to his pre-injury occupation. On September 17, 2014, Welch treated with Dr. Krissondra Klop, who noted that Welch remained unchanged since his last visit and that he was released to regular duty. On September 29, 2014, Welch again treated with Dr. Blanchard, who noted Welch's condition remained unchanged since the last visit and his work status was to return to regular duty. Notably, Welch subsequently had an independent functional capacity evaluation ("FCE") performed in December 2014, which indicated Welch was limited to "medium work level."

[¶ 9] On September 9, 2014, WSI issued an order ("disability benefits order"), holding that Welch was not entitled to disability or vocational rehabilitation benefits after July 18, 2014, that the first vocational rehabilitation option was "return to the same occupation, any employer," and that Welch had been released to work without restrictions effective June 24, 2014. On December 16, 2014, WSI issued another order ("fraud order"), finding that Welch willfully and intentionally made false statements and failed to fully report his income and work activities and that, as a result, WSI continued paying Welch temporary total disability benefits. WSI ordered that all benefits be terminated after December 16, 2014, and that Welch repay $33,289.15.

[¶ 10] Welch requested an administrative hearing on both the September and December 2014 orders. In July 2015, the ALJ held a consolidated administrative hearing on the specified issues regarding WSI's two orders. After the hearing, the ALJ issued a decision affirming the September 2014 disability benefits order, finding Welch was able to return to work as a journeyman carpenter on June 24, 2014,

but reversing the December 2014 fraud order, finding Welch had not made false statements "willfully." Both Welch and WSI requested reconsideration, which the ALJ denied. Welch appealed, and WSI cross-appealed to the district court. The district court affirmed the ALJ's decision.

## II

[¶ 11] We exercise limited appellate review of administrative decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Higginbotham v. Workforce Safety & Ins.*, 2014 ND 147, ¶ 6, 849 N.W.2d 233. On appeal, this Court reviews the agency decision and, like the district court, must affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. §§ 28–32–46, 28–32–49.

[¶ 12] "When an ALJ issues findings of fact, conclusions of law, and [an] order, this Court recognizes the ALJ was in a better position to observe and assess the credibility of witnesses and resolve conflicts in evidence, and will therefore apply the same deferential standard of review to the ALJ's factual findings as used for agency decisions." *Higginbotham*, 2014 ND 147, ¶ 7, 849 N.W.2d 233. In reviewing an ALJ's findings of fact, this Court "do[es] not make independent findings or substitute [its] judgment for that of the ALJ, but determine[s] only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." *Id.* (quoting *Bishop v. Workforce Safety & Ins.*, 2012 ND 217, ¶ 6, 823 N.W.2d 257). "Questions of law, on the other hand, are fully reviewable on appeal." *Id.*

## III

[¶ 13] Welch argues the greater weight of the evidence does not show he was able to return to work regular duty as a journeyman carpenter as of June 24, 2014.

[¶ 14] WSI's September 2014 disability benefits order, which the ALJ affirmed, concluded that Welch had not met his burden of establishing ongoing disability under N.D.C.C. §§ 65–05–08(6) and 65–05–08.1. The order also concluded that Welch's first appropriate rehabilitation option was "return to the same occupation, any employer" under N.D.C.C. ch. 65–05.1–01(4). WSI therefore ordered, and the ALJ affirmed, Welch was not entitled to additional vocational rehabilitation benefits or disability benefits beyond July 18, 2014.

[¶ 15] Welch argues WSI has the burden of proving the efficacy of a vocational rehabilitation plan and Welch's ability to work regular duty as a journeyman carpenter. Generally, we have said WSI has the burden of establishing a rehabilitation plan under N.D.C.C. ch. 65–05.1 is appropriate. *See Paul v. N.D. Workers Comp. Bureau*, 2002 ND 96, ¶ 8, 644 N.W.2d 884. "The clear intent of N.D.C.C. ch. 65–05.1 is to rehabilitate an injured worker so the worker may return to substantial gainful employment, meaning actual rehabilitation with a realistic opportunity to return to work." *Shotbolt v. N.D. Workforce Safety & Ins.*, 2010 ND 13, ¶ 19, 777 N.W.2d 853. "A rehabilitation plan is appropriate when it meets the requirements of N.D.C.C. ch. 65–05.1 and gives the claimant a reasonable opportunity to obtain employment." *Id.* A rehabilitation plan need not guarantee a claimant either a job or a predetermined weekly wage. *Paul*, at ¶ 8.

[¶ 16] Although Dr. Blanchard released Welch to return to work using a "common-sense" approach on June 24, 2014, Welch contends no evidence shows Dr. Blanchard was aware of Welch's work demands. He contends Dr. Blanchard's work release was based on information provided by WSI, and when Welch tried performing less demanding work, it still resulted in leg pain, swelling, and bruising. He argues no evidence shows an intervening injury or change in his left-knee medical condition and the greater weight of objective medical evidence shows he could not return to regular duty work as a journeyman carpenter.

[¶ 17] Welch also offered evidence at the hearing of the FCE he underwent in December 2014, which placed him at a "medium" activity level with restrictions on walking, standing, squatting, and kneeling. Welch contends the ALJ improperly disregarded his FCE results and erred by requiring a medical provider to "verify" the FCE. He asserts that the ALJ's finding the FCE was not supported by medical records was unfounded and that medical evidence does not contradict the FCE results. He asserts WSI did not meet its burden to prove a return to unmodified work as a journeyman carpenter was the first appropriate rehabilitation option under N.D.C.C. § 65–05.1–01(4) and (6).

[¶ 18] WSI responds, however, that its underlying order is not solely a rehabilitation order, but also addresses whether he was entitled to continuing disability benefits, and the order is therefore governed by N.D.C.C. § 65–05–08. Under N.D.C.C. § 65–05–08(6), "[i]t is the burden of the employee to show that the inability to obtain employment or to earn as much as the employee earned at the time of injury is due to physical limitation related to the injury, and that any wage loss claimed is the result of the compensable injury." Section 65–05–08.1, N.D.C.C., further provides for certain requirements of the injured employee and employee's doctor to certify and file reports verifying disability.

[¶ 19] WSI argues Welch was not placed on any physical restrictions after June 24, 2014, and, therefore, disability benefits were not payable under N.D.C.C. § 65–05–08(6). WSI also asserts that because Welch was released to regular duty as a journeyman carpenter, the vocational rehabilitation plan provided him a reasonable opportunity to obtain substantial gainful employment. WSI argues the ALJ's decision correctly applied the law based on the evidence and Welch is asking this Court to reweigh the evidence.

[¶ 20] Although Welch and WSI each argue the other party has the burden under the respective statutes, the ALJ addressed both N.D.C.C. §§ 65–05.1–01 and 65–05–08 in its decision. The ALJ found

Welch was released to work to perform regular duty by three different medical providers. The ALJ found Dr. Blanchard was aware of Welch's employment duties and the record supported his opinion. The ALJ also found Welch's FCE was not persuasive, explaining in part that FCEs are self-limiting and this FCE was not supported by the medical records. The ALJ held WSI correctly identified the first appropriate rehabilitation option under N.D.C.C. § 65–05.1–01(4) and held Welch is able to return to work as a journeyman carpenter. The ALJ also held Welch had failed to meet his burden under N.D.C.C. § 65–05–08(6). The ALJ found that no medical doctor had certified Welch's disability status under N.D.C.C. § 65–05–08.1(1) and Dr. Blanchard's opinion was credible and supported by the record.

[¶ 21] Here, the record shows Welch saw Dr. Blanchard in June 2014, at which time Dr. Blanchard released him to return to work using a "common sense approach," and placing him on regular duty. While Welch asserts no evidence shows Dr. Blanchard was familiar with Welch's work demands, his notes indicate he discussed job duties with Welch. Dr. Blanchard's opinion was confirmed by both Drs. O'Regan and Klop, and Welch was released to regular duty with no physical limitations to support disability benefits. Although Welch submitted to an FCE in December 2014, indicating he was limited to "medium work level," the ALJ specifically found the FCE was not persuasive, relying instead on the medical doctors' opinions in reaching its decision. The ALJ's evaluation of the FCE's weight and credibility falls within the purview of the ALJ's discretion in making factual determinations. *See Higginbotham*, 2014 ND 147, ¶ 7, 849 N.W.2d 233.

[¶ 22] Based on this record, we conclude a reasoning mind could have reasonably concluded Welch's first appropriate rehabilitation option was "return to the same occupation, any employer" under N.D.C.C. ch. 65–05.1–01. We further conclude a reasoning mind could have reasonably concluded Welch was able to return to work regular duty as a journeyman carpenter as of June 24, 2014. We therefore affirm the judgment to the extent that it affirms the ALJ's decision holding Welch was not entitled to additional vocational rehabilitation benefits and disability benefits after July 18, 2014.

### IV

[¶ 23] In its cross-appeal, WSI argues the ALJ misapplied the law in deciding Welch's false statements were not willful, the ALJ's findings his false statements were not willful are not supported by the evidence, and the ALJ erred in reversing WSI's fraud order.

[¶ 24] Section 65–05–33, N.D.C.C., provides both criminal and civil penalties for a false claim or false statement by a person seeking WSI benefits or payment for services. Under N.D.C.C. § 65–05–33(1) and (3), a claimant who "[w]illfully ... makes a false statement in an attempt to secure payment of benefits or payment for services" or who "[w]illfully misrepresents that person's physical condition" must reimburse WSI for any benefits paid based upon the false statement and forfeit any additional benefits relative to that injury. Under N.D.C.C. § 65–05–33(4), " 'statement' includes any testimony, claim form, notice, proof of injury, proof of return-to-work status, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test results, or other evidence of loss, injury, or expense."

[¶ 25] "To trigger the statutory consequences for the civil penalties in N.D.C.C. § 65–05–33, WSI must prove: '(1) there is a false claim or statement; (2) the

false claim or statement is willfully made; and (3) the false claim or statement is made in connection with any claim or application for benefits.' " *Neuhalfen v. N.D. Workforce Safety & Ins. Fund*, 2009 ND 86, ¶ 11, 765 N.W.2d 681 (quoting *Fettig v. Workforce Safety & Ins.*, 2007 ND 23, ¶ 13, 728 N.W.2d 301). For the civil penalties, WSI must prove the elements of N.D.C.C. § 65–05–33 by a preponderance of the evidence. *Hausauer v. N.D. Workers Comp. Bureau*, 1997 ND 243, ¶ 13, 572 N.W.2d 426.

[¶ 26] For purposes of the statute's civil penalties, we have consistently held "willfully" means conduct engaged in "intentionally" and "purposefully," not "inadvertently." *Schoch v. N.D. Workforce & Ins.*, 2010 ND 25, ¶ 16, 778 N.W.2d 542; *Neuhalfen*, 2009 ND 86, ¶ 12, 765 N.W.2d 681; *Fettig*, 2007 ND 23, ¶ 13, 728 N.W.2d 301; *Forbes v. Workforce Safety & Ins. Fund*, 2006 ND 208, ¶ 13, 722 N.W.2d 536; *Hausauer*, 1997 ND 243, ¶ 12, 572 N.W.2d 426; *Dean v. N.D. Workers Comp. Bureau*, 1997 ND 165, ¶ 15, 567 N.W.2d 626; *F.O.E. Aerie 2337 v. N.D. Workers Comp. Bureau*, 464 N.W.2d 197, 201 (N.D. 1990). In *Hausauer*, at ¶ 14, this Court further explained that "willfully" does not require an "intent to defraud by knowingly misrepresenting, misstating, or failing to disclose any material fact," but only requires proof a false statement was made "intentionally" and "purposefully" in connection with any claim or application. A claimant's "state of mind can rarely be proven directly and must usually be inferred from conduct and circumstantial evidence." *Forbes*, at ¶ 13 (quoting *Dean*, at ¶ 20).

[¶ 27] In addition to showing a false statement is willful, WSI must also prove the claimant's false statement is material. *Neuhalfen*, 2009 ND 86, ¶ 12, 765 N.W.2d 681. Under N.D.C.C. § 65–05–33, this Court has established two separate tests to decide "materiality" for purposes of the civil penalties. "When WSI seeks forfeiture of future benefits, a false statement or false claim is sufficiently material if WSI proves the claimant's statement 'could have misled' WSI or medical experts in deciding the claim." *Neuhalfen*, at ¶ 13 (quoting *Fettig*, 2007 ND 23, ¶ 13, 728 N.W.2d 301). When WSI seeks reimbursement of benefits paid, however, WSI must prove the false statement actually caused the benefits to be paid in error. *Neuhalfen*, at ¶ 13; *Fettig*, at ¶ 13; *Forbes*, at ¶ 14.

[¶ 28] WSI argues the ALJ's decision on the December 2014 fraud order should be reversed because the ALJ misapplied the law by focusing on whether Welch thought he had to report his work activity and money he received, as opposed to whether he "intentionally" did not report it. WSI asserts the evidence shows: Welch assisted with projects operated under MDW Construction, payments totaling over $10,000 were made to his business, checks were signed by Welch and deposited in an account on which he was the sole signatory, and Welch was the person with access to and control of the money. WSI further points out that no evidence showed any payments to his brother, Welch had spent his life performing the type of work completed on the projects, and Welch reported he had not received money from any source other than WSI despite receiving the significant payments. WSI also asserts Welch's bank records do not show any payments to his brother.

[¶ 29] In its December 2014 order, WSI concluded that Welch willfully made false statements, willfully failed to report his income and work activities, and was not entitled to any further medical, vocational rehabilitation and permanent partial impairment benefits after December 16, 2014. WSI's decision noted that Welch's disability benefits had already been discontinued

after July 18, 2014, and that he owed $33,289.15 to WSI for reimbursement. In reversing WSI's order, the ALJ concluded WSI failed to prove Welch had willfully made false statements and willfully failed to report income and work activity to WSI. The ALJ specifically found that Welch knew he had to report any type of work whether or not for pay to WSI; that his brother did the majority of work for the two projects of Welch's business, MDW Construction; and that Welch assisted his brother in some of those activities and should have reported it to WSI but failed to do so. However, the ALJ found that Welch's brother received the income from the two projects and had access to the funds with a debit card and that Welch "inadvertently" failed to notify WSI of the work. The ALJ reasoned:

> After a review of the totality of the evidence in this case, WSI failed to meet its burden of proof on item 2 [whether the false claim or statement was willfully made]. This involved a short period of time from approximately June, 2013 to October, 2013, when [Welch's brother] was in North Dakota. There have been no such incidents since that time period. It was reasonable for Welch to assume that assisting his brother, while it may be considered "working", given the circumstances of this case was simply helping a family member. It was also reasonable for Welch to assume that if any money received through his company that went directly to [his brother], was not his income to report to WSI if he did not receive any of it. Welch may have indirectly receive[d] the benefits of some of that income because [his brother] may have assisted in paying for living expenses. It was reasonable to assume that this would not be considered income to Welch. If Welch would have obtained a different roommate to share the living expenses, that would not be considered

reportable. Welch could have also considered this sharing of expenses to be a gift from [his brother]. The totality of the circumstances do not show that Welch purposively tried to defraud WSI to maintain his benefits. There were no tax records of any sort in the record to show Welch claimed this as income. There was no evidence to contradict that the money from Quest and Oahu that went through MDW Construction account all went to [his brother]. There was evidence that supported both positions in this case; however, the burden is on WSI and based upon all the evidence WSI failed to meet that burden.

(Emphasis added.) In its order denying reconsideration, the ALJ also stated that "Welch told WSI that he was going to form his own business so he could start work right away when he was physically able to do the work." The ALJ further explained, "Using that business to temporarily help your brother and not using any of the money that went through the business and giving it all to your brother was credible."

[¶ 30] Here, in finding Welch's false statements were not willful, the ALJ found Welch had "inadvertently" failed to notify WSI of the work he had done because he merely assisted his brother on the projects Welch's business, MDW Construction, had completed during the relevant period. The ALJ held it was "reasonable" for Welch to assume he did not need to report the work because he was helping a family member and did not need to report the money he received on behalf of MDW Construction because it was income to his brother. The ALJ also found Welch had no intent to "defraud WSI to maintain his benefits." These findings constitute a misapplication of the law.

[¶ 31] For purposes of N.D.C.C. §§ 65–05–08(3) and 65–05–33, WSI promulgated

N.D. Admin. Code § 92–01–02–51.2, which defines "work" as "physical or mental effort exerted to do or to make something for any amount of remuneration or physical or mental effort exerted to do or to make something that a reasonable person would consider commonly done or made for remuneration." This record contains the status reports Welch submitted to WSI from June 2013 to August 2014, in which, with one exception, Welch declared he had not worked or received money from any source other than WSI. Each of these status reports state:

> You must accurately report work of any kind (voluntary, part-time, or full-time) that you do, whether you are paid or not. You must report any money received from work, activities, or services of any kind, regardless of profit or loss. "Work" is defined as physical or mental effort exerted to do or make something for any amount of remuneration, or physical or mental effort exerted to do or make something that a reasonable person would consider commonly done or made for remuneration.

[¶ 32] As provided to Welch, WSI's definition of "work" does not include any exception for assisting a family member on projects that a claimant's business had successfully bid upon and completed. This definition of work necessarily includes a claimant's physical and mental efforts in running a business, even if on a short-term basis. Moreover, although the ALJ found Welch "inadvertently" made false statements and his actions were not for purposes of defrauding WSI to continue to receive benefits, this Court has said "willfully" does not require "an intent to defraud," but merely that the false statements be made intentionally in connection with a claim. *Hausauer*, 1997 ND 243, ¶ 14, 572 N.W.2d 426; *see also Sample v. N.D. Dep't of Transp.*, 2009 ND 198, ¶ 12, 775 N.W.2d 707 ("'[W]illful' means '[v]ol-

untary and intentional, but not necessarily malicious," quoting *Black's Law Dictionary* 1630 (8th ed. 2004)). We conclude the ALJ misapplied the law by failing to apply the proper definition of "work" and by requiring WSI to prove Welch had an intent to defraud WSI for him to be acting "willfully."

[¶ 33] We therefore reverse the judgment to the extent that it affirms the ALJ's decision reversing WSI's fraud order. We remand the case to WSI for further findings and conclusions to apply the correct definition of "work" and proper legal standard of "willfully" under N.D.C.C. § 65–05–33. If Welch's false statements are found to have been "willfully" made under the proper legal analysis, findings and conclusions on remand should also include whether the false statements were material, *i.e.*, that the false statements actually caused the benefits to be paid in error, to support any reimbursement to WSI for benefits paid. *See Neuhalfen*, 2009 ND 86, ¶ 13, 765 N.W.2d 681.

V

[¶ 34] The judgment is affirmed in part and reversed in part, and the case is remanded to WSI for proceedings consistent with this opinion.

[¶ 35] Carol Ronning Kapsner, S.J.

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Gerald W. VandeWalle, C.J.

[¶ 36] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this

decision. Surrogate Judge Carol Ronning Kapsner, sitting.