1999 ND 181

**Arlo SVEDBERG, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

and

**Community News, Inc., Respondent.**

**No. 990082.**

Supreme Court of North Dakota.

Sept. 8, 1999.

Stephen D. Little, Dietz, Little & Haas, Bismarck, N.D., for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, N.D., for appellee.

NEUMANN, Justice.

[¶ 1] Arlo Svedberg appeals from a district court judgment affirming an order of the North Dakota Workers Compensation

Bureau denying Svedberg further disability and vocational rehabilitation benefits. We reverse and remand.

[¶ 2] Svedberg began working for Community News, Inc., which published several newspapers, in 1984. Svedberg worked as a reporter, photographer, and advertising salesman, and also performed various other duties including shoveling snow and delivering bundles of newspapers. In January 1995 Svedberg suffered a work-related injury to his right shoulder which required surgery to repair a torn rotator cuff. The Bureau accepted Svedberg's claim and paid benefits, including disability benefits.

[¶ 3] Svedberg had previously suffered a work-related injury to his back in 1969 while working as a firefighter in Grand Forks. He had surgery and returned to his job several months later. He twice reinjured his back on the job, requiring additional surgeries in 1971 and 1973. Following the 1973 surgery Svedberg was unable to continue working as a firefighter.

[¶ 4] Svedberg also suffered from ongoing psychological difficulties. He had a history of personality disorders and suffered from panic attacks. In the months preceding the January 1995 shoulder injury Svedberg suffered from depression, which intensified after his injury.

[¶ 5] In August 1995 the Bureau initiated vocational rehabilitation services for Svedberg. The Bureau's vocational consultant, CorVel Corporation, determined the appropriate rehabilitation option under N.D.C.C. § 65–05.1–01(4) was return to the same employer in a modified position. Community News offered Svedberg a less physically demanding position, but at a significantly lower wage and with no benefits. Svedberg had moved to Devils Lake, and would have been required to commute to the job. Svedberg's treating physician, Dr. Robert Clayburgh, released Svedberg to return to work at the modified position. The Bureau, however, rejected the vocational rehabilitation plan, noting Svedberg "has a valid reason for not relocating and

cannot be expected to drive 100 miles each way to work" for a minimum wage job. The Bureau directed CorVel to explore other options and amend the plan.

[¶ 6] Dr. Clayburgh subsequently released Svedberg to return to work with restrictions of "no repetitious pushing or pulling of the right arm or doing any overhead lifting or reaching." CorVel submitted an amended vocational rehabilitation plan, again identifying the modified position at Community News as the first option, but also concluding Svedberg had transferable skills and was qualified to work as an advertising salesperson, photographer, reporter, editorial assistant, graphic artist, van driver, bus driver, or truck driver. CorVel provided this list of jobs to Dr. Clayburgh, who agreed they were all within Svedberg's "current level of physical abilities."

[¶ 7] The Bureau approved the amended vocational rehabilitation plan and, on April 21, 1996, issued a notice of intention to discontinue benefits notifying Svedberg his disability benefits would be terminated effective April 23, 1996. On April 25, 1996, the Bureau issued an order denying further disability or vocational rehabilitation benefits. Svedberg requested an administrative hearing, which was held on June 9, 1997. Following a delay for additional medical testimony, the administrative law judge (ALJ) issued recommended findings of fact, conclusions of law, and order on January 6, 1998, concluding the vocational rehabilitation plan was appropriate and recommending affirmance of the prior order denying further benefits. The Bureau adopted the ALJ's recommended findings, conclusions, and order, and Svedberg appealed to the district court. The district court affirmed the Bureau's order, and Svedberg now appeals to this Court.

[¶ 8] The dispositive issue in this case is whether the vocational rehabilitation plan adopted by the Bureau was appropriate under N.D.C.C. § 65–05.1–01, which provides in part:

3. It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. "Substantial gainful employment" means bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, functional capacities, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practical and as nearly as possible to ninety percent of the employee's average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued under section 65–05.1–02.1, whichever is less. The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option under subsection 4 which meets this income test set out above.

4. The first appropriate option among the following, calculated to return the employee to substantial gainful employment, must be chosen for the employee:

   a. Return to the same position.

   b. Return to the same occupation, any employer.

   c. Return to a modified position.

   d. Return to a modified or alternative occupation, any employer.

   e. Return to an occupation within the local job pool of the locale in which the claimant was living at the date of injury or of the employee's current address which is suited to the employee's education, experience, and marketable skills.

   f. Return to an occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills.

   g. On-the-job training.

   h. Short-term retraining of fifty-two weeks or less.

   i. Long-term retraining of one hundred four weeks or less.

   j. Self-employment.

Interpretation of a statute is a question of law fully reviewable by this Court. *Shiek v. North Dakota Workers Compensation Bureau,* 1998 ND 139, ¶ 16, 582 N.W.2d 639. Our primary objective in construing a statute is to ascertain the intent of the legislature. *Id.*

[¶ 9] The dispute in this case centers on the failure to consider Svedberg's prior back injuries and psychological problems when assessing appropriate employment options in the vocational rehabilitation plan. The record demonstrates CorVel did not consider Svedberg's back injuries or psychological problems when it developed the plan, and Dr. Clayburgh did not consider them when he approved the employment options in the plan. Greg Toutges from CorVel testified at the administrative hearing:

> Q. [by Mr. Little] . . . I think you said the purpose of CorVel's rehabilitation activities is to determine the claimant's functional limitations assessment and what they can do despite those limitations?
>
> A. Correct.
>
> Q. Okay. Thanks. Am I correct in thinking that when you conducted Mr. Svedberg's functional limitations you were concerned with his right shoulder?
>
> A. Correct.
>
> Q. Did you look at anything else, any other limitations?
>
> A. Not that I'm aware of.
>
> Q. Were you aware of any prior Workers Compensation injuries?
>
> A. No.
>
> Q. Okay. Aware of any, any permanent residuals from those injuries?

A. No.

Q. That's something that the Bureau didn't provide CorVel?

A. I doubt it, because I just noticed this thing about the back injuries when he was employed by the fire department.

Q. You just saw it right now?

A. Yeah.

Q. And with respect to the information given Dr. Clayburgh, then, for his approval of various types of jobs, that would have been limited to the shoulder injury, too?

A. I would assume so.

Q. Do you know what kinds of records Dr. Clayburgh had? Let's talk about what he got from CorVel. That would have been limited to the shoulder injury. Is that right?

A. I believe so.

When Toutges later commented on the effects of Svedberg's back injuries, the ALJ asked clarifying questions:

THE COURT: You testified earlier that you were not aware of the fact that those injuries had taken place?

THE WITNESS: No, I wasn't aware of them.

THE COURT: So you were making that comment now, after the fact, and it was not considered at the time that the plan was developed. Is that correct?

THE WITNESS: That's correct.

[¶ 10] The crucial question presented in this case is whether a vocational rehabilitation plan must take into account all of the injured worker's functional limitations existing at the time of the injury, or only those directly caused by the current work injury. The Bureau argues our decision in *Holtz v. North Dakota Workers Compensation Bureau*, 479 N.W.2d 469 (N.D. 1992), is dispositive of this issue.

[¶ 11] In *Holtz*, the claimant had to leave her job after she contracted dermatitis while working as a beautician. She was granted temporary total disability benefits. A week after she left her job, she fell and severely fractured her elbow, requiring surgery. A few months later she suffered further injuries in an automobile accident. Holtz asserted the Bureau should have considered her physical limitations caused by these subsequent, non-work-related injuries when it assessed her eligibility for disability and rehabilitation benefits. We concluded that, in the context of subsequent non-work-related injuries, such disabilities were not "medical limitations" [1] appropriate for consideration when assessing eligibility for disability benefits and developing a vocational rehabilitation plan under N.D.C.C. § 65–05.1–01(3). In so holding, we stated "we believe the intent of the legislature was for the Bureau to consider an individual's medical limitations *at the time that individual sustained a work-related injury*." *Holtz*, 479 N.W.2d at 470–71 (emphasis added). It was precisely because Holtz's non-work-related injuries occurred after her work-related disability, when she was no longer working, that we held the physical disabilities caused by these subsequent injuries effectively superseded her work-related disability and should not be considered in assessing disability and rehabilitation benefits.

[¶ 12] We applied *Holtz* in *Bjerke v. North Dakota Workers Compensation Bureau*, 1999 ND 180, 599 N.W.2d 329. Bjerke suffered from a congenital back problem and had surgery in June 1993. In December 1993 she applied for workers compensation benefits for work-related repetitive-motion injuries to her wrists and hands. The Bureau determined Bjerke was temporarily totally disabled by these work-related injuries from March 14, 1994,

---

1. Prior to 1995, N.D.C.C. § 65–05.1–01(3) provided that substantial gainful employment meant work which was reasonably attainable "in light of the individual's injury, medical limitations, age, education, previous occupa- tion, experience, and transferable skills." The 1995 legislature replaced the term "medical limitations" with "functional capacities." *See* 1995 N.D. Sess. Laws ch. 628, § 2.

and she had carpal tunnel surgeries in November 1994 and May 1995. While she was disabled by the carpal tunnel injuries, Bjerke developed inflammation caused by screws implanted during her prior back surgery. In 1996 the Bureau determined Bjerke was no longer disabled by her work-related injuries and terminated disability benefits. Bjerke claimed she remained disabled by her back injury and her doctor recommended she not return to work. The Bureau terminated Bjerke's disability benefits and we affirmed that action, concluding a claimant whose work-related disability has resolved, but who remains disabled due to a subsequent non-work-related disability, is not entitled to continued disability benefits. We stressed disability benefits may only be paid for a disability caused by a work-related injury. *Id.* at ¶¶ 21–22.

[¶ 13] *Bjerke* is distinguishable from this case. The issue here is not whether Svedberg is entitled to ongoing disability benefits for a non-work-related disability which arose after the work injury in 1995. Rather, the dispositive issue is whether the Bureau can ignore an injured worker's actual physical condition at the time of the work-related injury in formulating a vocational rehabilitation plan under N.D.C.C. ch. 65–05.1. The focus of this case is not upon Svedberg's eligibility for benefits based upon his back and psychological problems, but whether the Bureau must consider those preexisting problems when it assesses how best to return Svedberg to substantial gainful employment.

[¶ 14] Svedberg suffered from the limitations caused by his prior back injuries and psychological problems at the time of his shoulder injury in 1995. To the extent that it holds the Bureau must consider the claimant's medical limitations which existed at the time he sustained the work-related injury, *Holtz* actually supports Svedberg's position in this case. This concept is closely related to the adage that the employer takes the employee as he finds him. *See Bruns v. North Dakota Workers Compensation Bureau,* 1999 ND 116, ¶ 16 n. 2, 595 N.W.2d 298; *Nelson v. North Dakota Workmen's Compensation Bureau,* 316 N.W.2d 790, 795 (N.D.1982); *Balliet v. North Dakota Workmen's Compensation Bureau,* 297 N.W.2d 791, 795 (N.D.1980). It is perfectly logical that the rehabilitation plan would not take into consideration severe disabilities caused by non-work-related accidents occurring after the claimant is no longer working. However, functional limitations which existed at the time the claimant was performing the job are elements of the employee as the employer "found" him, and are valid factors which should be taken into consideration when the Bureau determines whether certain employment options present an opportunity for "substantial gainful employment." *See* N.D.C.C. § 65–05.1–01(3).

[¶ 15] We have explained our purpose in construing statutes:

> In construing a statute, we consider the entire enactment of which it is a part and, to the extent possible, interpret the provision consistent with the intent and purpose of the entire Act. In determining legislative intent, the court may consider such matters as the objects sought to be obtained, the statute's connection to other related statutes, and the consequences of a particular construction. Statutes must be construed logically so as not to produce an absurd result.

*In re M.Z.,* 472 N.W.2d 222, 222–23 (N.D. 1991) (citations omitted). The legislative intent of the rehabilitation statutes is clearly expressed in N.D.C.C. § 65–05.1–01(2):

> The purpose of this chapter is to ensure that injured employees covered by this title receive services, so far as possible, necessary to assist the employee and the employee's family in the adjustments required by the injury to the end that the employee receives comprehensive rehabilitation services including medical, psy-

chological, economic, and social rehabilitation.

Subsection 3 of N.D.C.C. § 65–05.1–01 states:

It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs.

In order to carry out the stated goals of the rehabilitation statutes, the Bureau is required to establish a medical assessment team on a case-by-case basis to assess "the worker's physical restrictions and limitations." N.D.C.C. § 65–05.1–02(6). The vocational consultant must then assess the worker's job options in light of those restrictions and limitations. *Johnson v. North Dakota Workers' Compensation Bureau*, 539 N.W.2d 295, 298 (N.D.1995); N.D.C.C. § 65–05.1–02(7).

■ [¶ 16] In light of the clearly expressed legislative intent underlying N.D.C.C. ch. 65–05.1, we have stated that "[h]aving the worker back on the job contributing in a productive and meaningful way . . . provides real economic, social, and psychological benefit for society and for the individual worker." *Baldock v. North Dakota Workers Compensation Bureau*, 554 N.W.2d 441, 446 (N.D.1996). In assessing the validity of a vocational rehabilitation plan, "the question is whether the plan, at the time, gave [the injured worker] a reasonable opportunity to obtain substantial gainful employment in the state." *Lucier v. North Dakota Workers Compensation Bureau*, 556 N.W.2d 56, 60 (N.D. 1996).

[¶ 17] It is clear that the intent of N.D.C.C. ch. 65–05.1 is to rehabilitate the injured worker so he may return to substantial gainful employment. We have no doubt the legislature intended actual rehabilitation, with a realistic opportunity to return to work, and not a theoretical rehabilitation on paper only. If the Bureau, the consultant, the medical assessment team, and the treating physician assess the claimant as a hypothetical "perfect" individual with only the current work-related disability, and do not take the worker's actual whole-person functional capacities into account, any vocational rehabilitation plan based upon that assessment will be flawed and unworkable. When the work-related injury makes return to the same job or occupation impossible, and the focus of rehabilitation turns to transferable skills and other occupations, common sense dictates that the worker's actual functional abilities must be considered if the vocational rehabilitation plan is to be meaningful.

[¶ 18] We are also mindful of the absurd consequences which might result were we to adopt the Bureau's position. The result urged by the Bureau would apparently allow consideration of physically demanding jobs for Svedberg so long as they met Dr. Clayburgh's restrictions, based solely on the shoulder injury, of no repetitive pushing or pulling of the right arm or overhead lifting or reaching. The Bureau's position would allow it to consider as viable employment options, and base rehabilitation plans upon, jobs which the injured worker is clearly not capable of performing. We do not believe this falls within the letter or the spirit of the rehabilitation provisions of N.D.C.C. ch. 65–05.1.

[¶ 19] Adopting the construction of N.D.C.C. § 65–05.1–01 urged by the Bureau would render the rehabilitation process a sham, designed not to actually return injured workers to substantial gainful employment but merely to "rehabilitate" them on paper so their benefits may be cut off. We believe the legislature's intent was to create a process which leads to real rehabilitation and reemployment, not a theoretical rehabilitation which ignores the injured worker's actual situation. At some

point the Bureau must recognize it is dealing with real people, not merely statistics and notations in a file.[2]

[¶ 20] We reverse the judgment affirming the Bureau's order which denied further disability and rehabilitation benefits. We remand for entry of judgment reversing the Bureau's order and remanding to the Bureau for further proceedings in accordance with this opinion.

[¶ 21] VANDE WALLE, C.J., SANDSTROM, KAPSNER and MARING JJ., concur.

2. An interpretation of vocational rehabilitation under N.D.C.C. ch. 65–05.1 which focuses upon theoretical, rather than actual, rehabilitation would call into further question whether injured workers are getting meaningful relief under the Workers Compensation Act. *See Baldock*, 554 N.W.2d at 446–47 n. 4.