# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2024 ND 26

State of North Dakota, by and through
Workforce Safety and Insurance,  Appellee

v.

Dale Kringlie,  Appellant

and

Summit Siteworks LLC,  Respondent

### No. 20230184

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Nicholas W. Chase, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Jacqueline S. Anderson (argued) and Cloe A. Kilwein (appeared), Fargo, ND, for appellee.

Daniel E. Phillips, Fargo, ND, for appellant.

**Bahr, Justice.**

[¶1] Dale Kringlie appeals from a district court judgment reversing an administrative law judge ("ALJ") final order that reversed a Workforce Safety and Insurance ("WSI") order awarding temporary partial disability benefits based upon completion of a vocational rehabilitation plan. We conclude the district court did not err in reversing the ALJ's final order. We affirm.

I

[¶2] On April 23, 2019, Kringlie suffered work-related injuries to his right shoulder and right wrist while using a concrete drill. WSI accepted the claim and paid the associated medical expenses and disability benefits.

[¶3] WSI issued a vocational rehabilitation report for Kringlie on April 30, 2021, and issued its Notice of Vocational Case Manager's Report ("vocational rehabilitation report") on May 11, 2021. Kringlie requested reconsideration, asserting he was not able to perform any of the jobs outlined in WSI's vocational plan due to a neuropsychological condition. In July 2021, WSI issued its administrative order awarding temporary partial disability benefits based upon completion of a vocational rehabilitation plan. Kringlie requested a rehearing.

[¶4] In March 2022, an ALJ held an administrative hearing on the appropriate rehabilitation option. In August 2022, the ALJ issued findings of fact, conclusions of law, and a final order reversing WSI's July 2021 order. Although the ALJ held no evidence established Kringlie's neuropsychological condition is work-related, the ALJ found his condition is degenerative and his capabilities are much less than his capabilities were on the date of the vocational rehabilitation report and on the date of his injury.

[¶5] Independent of the medical treatment and assessments provided by WSI, and unbeknownst to WSI, Kringlie presented to Dr. Rodney Swenson for a neuropsychological consultation. Dr. Swenson examined Kringlie on April 26,

2021, just days before WSI issued its vocational rehabilitation report on April 30, 2021. Dr. Swenson also saw Kringlie on May 3, 2021, and May 5, 2021. Dr. Swenson testified as Kringlie's expert witness at the hearing. The ALJ's final order relied heavily on the opinion of Dr. Swenson. The ALJ found Kringlie was incapable of performing "any work" and incapable of "returning to an occupation within the local job pool[.]" The ALJ held the greater weight of the evidence showed WSI's rehabilitation plan for Kringlie included jobs Kringlie was not "capable of performing" on both the vocational rehabilitation report date and the work-injury date. The ALJ concluded WSI failed to establish the "first appropriate rehabilitation option" for Kringlie is "return to an occupation within the local job pool of the locale in which the claimant was living at the date of injury[.]"

[¶6] WSI appealed to the district court and the court reversed the ALJ's decision. The court held the ALJ misapplied the law by requiring WSI to consider Kringlie's functional limitations at the time WSI issued the vocational rehabilitation report. The court held, as a matter of law, WSI's vocational rehabilitation report needed to reflect his functional limitations at the time of his work-related injury, not at the time WSI issued its vocational rehabilitation report. The court further held the ALJ misconstrued N.D.C.C. § 65-05-08.1 and erroneously relied on Dr. Swenson's opinion to establish Kringlie's disability approximately two years before Dr. Swenson examined him. The court concluded the record overwhelmingly contradicts the ALJ's ruling, and the ALJ's conclusion of law regarding whether WSI failed to establish "the first appropriate rehabilitation option" is not supported by the ALJ's findings of fact.

II

[¶7] Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, courts exercise only limited appellate review of administrative agency decisions. *Provins v. Workforce Safety & Ins. Fund*, 2022 ND 213, ¶ 5, 982 N.W.2d 559; *Workforce Safety & Ins. v. Tolman*, 2020 ND 223, ¶ 5, 950 N.W.2d 144. In an appeal, the reviewing court must affirm an administrative agency order unless it determines a statutory ground for reversal is present. N.D.C.C.

§ 28-32-46; N.D.C.C. § 28-32-49 ("The judgment of the district court in an appeal from an order . . . of an administrative agency or the commission may be reviewed in the supreme court on appeal in the same manner as provided in section 28-32-46[.]"). Grounds for reversal include if "[t]he order is not in accordance with the law," "[t]he findings of fact made by the agency are not supported by a preponderance of the evidence," and "[t]he conclusions of law and order of the agency are not supported by its findings of fact." N.D.C.C. § 28-32-46(1), (5), and (6). On appeal from the district court, this Court reviews the ALJ's decision. N.D.C.C. § 28-32-49. However, "[t]he district court's analysis is entitled to respect if its reasoning is sound, because the legislatively-mandated district court review cannot be ineffectual." *Elshaug v. Workforce Safety & Ins.*, 2003 ND 177, ¶ 12, 671 N.W.2d 784.

[¶8] "When reviewing an appeal from a final order issued by an independent ALJ, courts apply the same deferential standard of review to the ALJ's factual findings as used for agency decisions." *Provins*, 2022 ND 213, ¶ 6 (quoting *Tolman*, 2020 ND 223, ¶ 6).

> Recognizing the ALJ had the opportunity to observe witnesses and the responsibility to assess the credibility of witnesses and resolve conflicts in the evidence, in reviewing the ALJ's findings of fact we do not make independent findings or substitute our judgment for that of the ALJ; we determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record.

*Id.* (quoting *Tolman*, at ¶ 6). This Court does not give deference to an independent ALJ's legal conclusions. *Id.* Questions of law are fully reviewable on appeal. *Id.*

### III

[¶9] Chapter 65-05.1, N.D.C.C., governs WSI's vocational rehabilitation services. "The purpose of [N.D.C.C. ch. 65-05.1] is to ensure that injured employees covered by this title receive services, so far as possible, necessary to assist the employee and the employee's family in the adjustments *required by the injury* to the end that the employee receives comprehensive rehabilitation

3

services, including medical, psychological, economic, and social rehabilitation." N.D.C.C. § 65-05.1-01(2) (emphasis added). Section 65-05.1-01(3), N.D.C.C., provides, in part:

> It is the goal of vocational rehabilitation to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. "Substantial gainful employment" means bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, functional capacities, education, previous occupation, experience, and transferable skills[.]

[¶10] "A rehabilitation plan is appropriate if it meets the requirements of N.D.C.C. ch. 65-05.1 and gives the injured worker a reasonable opportunity to obtain substantial gainful employment." *Beam v. N.D. Workforce Safety & Ins. Fund*, 2020 ND 168, ¶ 15, 946 N.W.2d 486. "The Legislature intended for claimants to be provided with actual rehabilitation, with a realistic opportunity to return to work, and not a theoretical rehabilitation on paper only." *Anderson v. Workforce Safety & Ins.*, 2015 ND 205, ¶ 10, 868 N.W.2d 508 (quoting *Genter v. Workforce Safety & Ins. Fund*, 2006 ND 237, ¶ 14, 724 N.W.2d 132). However, "[a] rehabilitation plan need not guarantee a claimant either a job or a predetermined weekly wage." *Beam*, at ¶ 15 (quoting *Welch v. Workforce Safety & Ins.*, 2017 ND 210, ¶ 15, 900 N.W.2d 822). WSI has the burden to establish a vocational rehabilitation plan is appropriate for the claimant. *Id.*; *see also Shotbolt v. N.D. Workforce Safety & Ins.*, 2010 ND 13, ¶ 20, 777 N.W.2d 853. "WSI's selection of a vocational rehabilitation plan will not be reversed when there is evidence from which a reasoning mind could have reasonably concluded that the rehabilitation plan would return the injured worker to substantial gainful employment which was reasonably attainable in light of his injury[.]" *Anderson*, at ¶ 11 (quoting *Higginbotham v. Workforce Safety & Ins.*, 2014 ND 147, ¶ 8, 849 N.W.2d 233).

[¶11] Here, the ALJ determined, regardless of whether Kringlie's capabilities are assessed as of the date of his work injury or as of the date of WSI's vocational rehabilitation report, WSI failed to establish the first appropriate rehabilitation option for Kringlie is to "return to an occupation within the local

job pool of the locale in which the claimant was living at the date of injury." The district court held the ALJ erred as a matter of law to the extent he relied on the date of WSI's vocational rehabilitation report. The court held "WSI's [vocational rehabilitation report] needed to reflect Kringlie's functional limitations at the time of his work-related injury and not Kringlie's functional limitations at the time WSI issued its [vocational rehabilitation report]." The court further held "the ALJ's conclusion of law that 'WSI has failed to establish that the first appropriate rehabilitation option for Kringlie is "return to an occupation within the local job pool of the locale in which the claimant was living at the date of injury[']" is not supported by the ALJ's findings of fact[.]"

[¶12] Kringlie argues the ALJ correctly required WSI to consider Kringlie's functional limitations at the time WSI issued the vocational rehabilitation report, rather than the time of the work-related injury. Kringlie further argues the ALJ properly considered his frontal temporal lobar degeneration, semantic variant when determining his functional limitations, and that the ALJ properly found he was not capable of working on both the vocational rehabilitation report date and the work-injury date.

[¶13] WSI argues the ALJ erred by considering Kringlie's functional limitations at the time WSI issued the vocational rehabilitation report. WSI further argues the ALJ misapplied the law when considering Kringlie's functional limitations. WSI argues it is not obligated to provide benefits to employees for non-work-related conditions. WSI further argues, in determining eligibility for further worker's compensation benefits, it need not consider the limitations associated with conditions that become disabling after the work injury. Finally, WSI argues the ALJ erred in finding Kringlie had limitations due to his pre-existing condition at the time of the work injury.

A

[¶14] Kringlie argues the ALJ correctly required WSI to consider Kringlie's functional limitations at the time WSI issued the vocational rehabilitation report. WSI argues it was only required to consider Kringlie's functional limitations at the time of Kringlie's work-related injury, April 23, 2019.

[¶15] In *Holtz v. North Dakota Workers Compensation Bureau*, 479 N.W.2d 469, 470-71 (N.D. 1992), this Court concluded subsequent non-work-related injuries were not appropriate for consideration in assessing eligibility for disability benefits and developing a vocational rehabilitation plan under N.D.C.C. § 65-05.1-01(3). We explained "the intent of the legislature was for the Bureau to consider an individual's medical limitations *at the time that individual sustained a work-related injury*." *Holtz*, at 470-71 (emphasis added).

[¶16] In *Bjerke v. North Dakota Workers Compensation Bureau*, 1999 ND 180, ¶¶ 21-22, 599 N.W.2d 329, this Court held a claimant whose work-related disability had resolved, but who remained disabled due to a subsequent non-work-related disability, was not entitled to continued disability benefits, stressing that disability benefits may only be paid for a disability caused by a work-related injury.

[¶17] In *Svedberg v. North Dakota Workers Compensation Bureau*, 1999 ND 181, ¶ 13, 599 N.W.2d 323, this Court distinguished *Bjerke*, explaining the issue was not "ongoing disability benefits" for a non-work-related disability arising after the work injury, but "whether the Bureau can ignore an injured worker's *actual physical condition at the time of the work-related injury* in formulating a vocational rehabilitation plan under N.D.C.C. ch. 65-05.1." (Emphasis added.) The claimant in *Svedberg* suffered from medical limitations caused by prior back injuries and psychological problems *at the time of his shoulder injury*. This Court explained *Holtz* actually supported the claimant's position:

> To the extent that it holds the Bureau must consider the claimant's medical limitations which existed at the time he sustained the work-related injury, *Holtz* actually supports Svedberg's position in this case. This concept is closely related to the adage that the employer takes the employee as he finds him. *See Bruns v. North Dakota Workers Compensation Bureau*, 1999 ND 116, ¶ 16 n.2, 595 N.W.2d 298; *Nelson v. North Dakota Workmen's Compensation Bureau*, 316 N.W.2d 790, 795 (N.D. 1982); *Balliet v. North Dakota Workmen's Compensation Bureau*, 297 N.W.2d 791, 795 (N.D. 1980). It is perfectly logical that the rehabilitation plan would not take into consideration severe disabilities caused by non-work-

related accidents occurring after the claimant is no longer working. However, functional limitations which existed at the time the claimant was performing the job are elements of the employee as the employer "found" him, and are valid factors which should be taken into consideration when the Bureau determines whether certain employment options present an opportunity for "substantial gainful employment." *See* N.D.C.C. § 65-05.1-01(3).

*Svedberg*, at ¶ 14. *Svedberg* therefore reiterates the relevant inquiry in formulating a vocational rehabilitation plan is the claimant's "actual physical condition at the time of the work-related injury" and the "functional limitations which existed at the time the claimant was performing the job are elements of the employee as the employer 'found' him[.]" *Svedberg*, 1999 ND 181, ¶¶ 13-14; *see also Holtz*, 479 N.W.2d at 471 (stating the Bureau must consider "an individual's medical limitations at the time that individual sustained a work-related injury").

[¶18] In *Anderson*, 2015 ND 205, ¶ 10, this Court again explained that in deciding "whether certain employment options present an opportunity for substantial gainful employment, WSI must take a claimant's *pre-existing functional limitations into account*." (Emphasis added.) In assessing the validity of a vocational rehabilitation plan, the question is "whether the plan, at the time [it was formulated], gave [the injured worker] a reasonable opportunity to obtain substantial gainful employment," *id.* at ¶ 11 (quoting *Hoffman v. N.D. Workers Comp. Bureau*, 1999 ND 66, ¶ 9, 592 N.W.2d 533); that is, the plan "would return the injured worker to substantial gainful employment which was reasonably attainable *in light of his injury*[.]" *Id.* (emphasis added) (quoting *Higginbotham*, 2014 ND 147, ¶ 8). Therefore, under our law, while the validity of the plan is assessed at the time it was formulated, a claimant's pre-existing, non-work-related medical limitations are taken into account as they existed at the time of the work-related injury.

[¶19] We conclude the ALJ misapplied the law and, accordingly, the ALJ's order "is not in accordance with the law" to the extent the ALJ considered Kringlie's pre-existing, non-work-related medical limitations as they had progressed at the time WSI issued the vocational rehabilitation report.

N.D.C.C. § 28-32-46(1). The proper consideration, addressed below, was Kringlie's pre-existing, non-work-related medical limitations that existed at the time Kringlie sustained the work-related injury.

B

[¶20] Kringlie argues the ALJ properly considered Dr. Swenson's opinion of Kringlie's functional limitations on the date of his April 23, 2019 work injury, and that Dr. Swenson's testimony shows he was unable to work on that date. WSI argues Dr. Swenson's opinion Kringlie was unable to work on April 23, 2019, may not be considered under N.D.C.C. § 65-05-08.1.

[¶21] Statutory interpretation is a question of law, which is fully reviewable on appeal. *Kutcka v. Gateway Bldg. Sys., Inc.*, 2023 ND 91, ¶ 6, 990 N.W.2d 605. Our primary objective in interpreting a statute is to determine the intent of the legislation. *Id.*

> In ascertaining the intent of the legislation, we look first to the words in a statute, giving them their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1-02-07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1-02-03 and 1-02-38(2). We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1-02-38(2) and (4).

*Kutcka*, at ¶ 6 (quoting *Ackre v. Chapman & Chapman, P.C.*, 2010 ND 167, ¶ 10, 788 N.W.2d 344 (citations omitted)).

[¶22] At the time of Kringlie's injury, N.D.C.C. § 65-05-08.1(2)(d) (2018) provided: "A doctor may not certify or verify past disability commencing more than sixty days before the doctor's examination of the employee." Section 65-

05-08.1(3), N.D.C.C., currently provides: "A health care provider may not certify or verify past disability commencing more than sixty days before the health care provider's examination of the employee." Both versions of section 65-05-08.1 would apply to Dr. Swenson. *See* N.D.C.C. § 65-01-02(21) ("'Health care provider' means a doctor of medicine or osteopathy, chiropractor, dentist, optometrist, podiatrist, or psychologist acting within the scope of the doctor's license, a physical therapist, an advanced practice registered nurse, or a certified physician assistant.").

[¶23] Approximately six months before Kringlie's April 23, 2019 work injury, Dr. Nicole Kiewel conducted a neuropsychological evaluation of Kringlie. Dr. Kiewel evaluated Kringlie due to concerns regarding Kringlie's memory.

[¶24] Dr. Swenson evaluated Kringlie on April 26, 2021. Dr. Swenson conducted neuropsychological testing and compared Kringlie's current test results with the test results from Dr. Kiewel's 2018 evaluation. Dr. Swenson found a "clear progression" in Kringlie's dementia. Dr. Swenson opined Kringlie's cognitive decline was at a point where Kringlie needed assisted living-type care. At the administrative hearing, Dr. Swenson testified Kringlie could not perform any of the job goals outlined in the vocational rehabilitation report because of his cognitive condition. Dr. Swenson also testified that at the time of his April 23, 2019 work injury, Kringlie should not have been working because he was a danger to himself and others given his condition.

[¶25] Dr. Swenson's opinion regarding Kringlie's inability to work on April 23, 2019, addressed Kringlie's inability to work more than sixty days before Dr. Swenson's April 2021 evaluation. Kringlie argues, however, that N.D.C.C. § 65-05-08.1 does not apply because Dr. Swenson did not "certify" Kringlie was "disabled."

[¶26] Kringlie misconstrues the prohibition in N.D.C.C. § 65-05-08.1. Under section 65-05-08.1(3), a health care provider "may not certify or *verify* past disability commencing more than sixty days before the health care provider's examination of the employee." (Emphasis added.) As commonly understood, to "verify" means "to confirm or substantiate in law by oath" or "to establish the

truth, accuracy, or reality of." *Merriam-Webster's Collegiate Dictionary* 1389 (11th ed. 2005); *see also American Heritage Dictionary* 1343 (2d Coll. ed. 1985) (defining "verify" as "[t]o prove the truth of by the presentation of evidence or testimony; substantiate"). Dr. Swenson's testimony at issue purports to substantiate or demonstrate Kringlie's inability to work on April 23, 2019. Accordingly, his testimony falls within the plain, ordinary, and commonly understood meaning of "verify" as it is used in N.D.C.C. § 65-05-08.1.

[¶27] Contrary to Kringlie's implication, a health care provider cannot sidestep section 65-05-08.1(3)'s prohibition by not using the words "disabled" or "disability." Under N.D.C.C. § 65-01-02(15), "'[d]isability' means loss of earnings capacity and may be permanent total, temporary total, or partial." Dr. Swenson testified regarding Kringlie's inability to perform certain functions on April 23, 2019. Dr. Swenson's testimony therefore constitutes an opinion regarding Kringlie's past disability.

[¶28] Kringlie argues *Workforce Safety and Insurance v. Salat*, 2019 ND 294, 936 N.W.2d 91, supports his position Dr. Swenson could opine regarding Kringlie's functional limitations two years before Dr. Swenson's examination. In *Salat*, the claimant's treating doctor released the claimant to regular duty on June 28, 2016. *Id.* at ¶ 3. At the request of WSI, Dr. Cooper performed an independent medical examination ("IME") of the claimant under N.D.C.C. § 65-05-28. *Id.* at ¶¶ 20-21. At the hearing, Dr. Cooper testified regarding what advice he would have given the claimant on June 28, 2016; "Dr. Cooper did not certify or verify [the claimant] was disabled on June 28, 2016, or at a later date." *Id.* at ¶ 21. Rather, Dr. Cooper "merely testified he would not have advised Salat to discard his crutches and boot or released him to work on June 28, 2016[,]" and "Salat's right ankle was not at pre-injury status." *Id.* We held "[t]his review for the *discontinuation of treatment* was within the scope of Dr. Cooper's duties as an independent medical examiner." *Id.* (emphasis added). For that reason, this Court concluded N.D.C.C. § 65-05-08.1 did not prohibit Dr. Cooper's testimony.

[¶29] Here, Dr. Swenson's testimony went beyond "merely" an opinion on the discontinuation of treatment. Rather, Dr. Swenson testified Kringlie was

unable to perform certain job functions on April 23, 2019. Because Dr. Swenson's testimony was to "verify" Kringlie was incapable of performing any work, *i.e.*, was "disabled," approximately two years before Dr. Swenson's examination of Kringlie, it was not permitted under N.D.C.C. § 65-05-08.1.

[¶30] We conclude the ALJ's reliance on Dr. Swenson's opinion and testimony to find Kringlie was disabled in April 2019 is prohibited by N.D.C.C. § 65-05-08.1. Accordingly, we conclude the ALJ's order "is not in accordance with the law." N.D.C.C. § 28-32-46(1).

C

[¶31] The ALJ found Kringlie was unable to perform his job functions on the date of his April 23, 2019 work injury. Without Dr. Swenson's testimony, the district court held "the record overwhelmingly contradicts the ALJ's ruling."

[¶32] Kringlie asserts it is undisputed Dr. Kiewel diagnosed him with frontal temporal degeneration, semantic variant on November 15, 2018, six months before his April 23, 2019 work injury. WSI responds there is no evidence Kringlie had limitations due to his pre-existing condition at the time of the work injury.

[¶33] This case involves a non-work-related diagnosis (frontal temporal lobar degeneration, semantic variant) that predates the work-related injury, and a progressive physical manifestation (or decline) that occurs after the work injury. Our decision in *Svedberg* provides guidance in that it focuses the relevant inquiry on Kringlie's "actual physical condition at the time of the work-related injury" in formulating a vocational rehabilitation plan. *Svedberg*, 1999 ND 181, ¶ 13. Kringlie's actual physical condition includes his "medical limitations" at the time he sustained the work-related injury. *Holtz*, 479 N.W.2d at 471. It does not include subsequent non-work-related disabilities, *Bjerke*, 1999 ND 180, ¶¶ 21-22, including non-work-related functional limitations that develop after the work-related injury.

[¶34] Kringle's reliance on *Anderson*, 2015 ND 205, is unavailing. In *Anderson*, the claimant challenged WSI's vocational rehabilitation plan contending, in

part, the ALJ failed to consider conflicting medical evidence. *Id.* at ¶ 14. In *Anderson*, the claimant had a pre-existing neck condition; while one doctor released the claimant to work with no restrictions, another doctor imposed driving restrictions after WSI formulated and adopted the claimant's vocational rehabilitation plan. *Id.* This Court discussed the evidence regarding the claimant's pre-existing neck condition and associated limitations and held the ALJ adequately addressed the inconsistencies in the medical opinions and sufficiently explained the reasons for disregarding the later doctor's medical evidence. *Id.* at ¶¶ 16-17. Unlike in *Anderson*, in this case there were no reported functional limitations with Kringlie's neuropsychological condition at the time of the April 2019 work injury.

[¶35] On November 15, 2018, six months before Kringlie's work injury, Dr. Kiewel diagnosed Kringlie with frontal temporal degeneration, semantic variant. However, Dr. Kiewel did not identify any functional limitations due to the diagnosis or place any limitations on Kringlie. Rather, Dr. Kiewel noted Kringlie "is able to independently complete all basic and complex activities of daily living." Dr. Kiewel also noted Kringlie reported that he was working 10-12 hours per day, five days per week, supervising employees, and organizing projects. According to Dr. Kiewel, Kringlie also reported he was able to "operate heavy equipment and maintain his CDL, without incident." Dr. Kiewel noted:

> [Kringlie] was able to present his own history in a clear and coherent fashion and had normal recall of recent and remote details. Hearing and vision appeared intact for testing purposes. His conversational speech was fluent and generally free from word finding difficulty. Auditory verbal comprehension was intact. There were no overt motor abnormalities observed. Mood was jovial and affect was of full range. Eye contact was appropriate. He had no difficulty following task instructions.

Dr. Kiewel found Kringlie to be "a gentleman of average intellectual functioning."

[¶36] Dr. Kiewel's professional assessment before Kringlie's work injury did not establish Kringlie was having cognitive or physical limitations that impacted his ability to perform work functions. Kringlie did not present any

admissible evidence indicating his cognitive or physical condition declined between Dr. Kiewel's 2018 assessment and Kringlie's April 23, 2019 work injury.

[¶37] Despite having a diagnosed condition pre-existing the work injury, the physical manifestation of functional limitations did not progress or decline until sometime after the work-related injury. Kringlie presented no admissible evidence upon which a reasonable person could find Kringlie was unable to work at the time of his work-related injury. Accordingly, we conclude the ALJ's findings of fact are not supported by a preponderance of the evidence. N.D.C.C. § 28-32-46(5).

[¶38] We conclude the ALJ misapplied the law when it considered Kringlie's functional limitations at the time WSI issued the vocational rehabilitation report. We further conclude the ALJ misapplied the law, N.D.C.C. § 65-05-08.1, when he relied on Dr. Swenson's opinion based on his examinations in April and May 2021 to find Kringlie was disabled in April 2019. Accordingly, we hold the ALJ's order "is not in accordance with the law." N.D.C.C. § 28-32-46(1). Finally, we conclude the ALJ's findings of fact are not supported by a preponderance of the evidence. N.D.C.C. § 28-32-46(5).

IV

[¶39] We affirm the district court's order reversing the ALJ's final order. We reinstate WSI's order awarding temporary partial disability. The judgment is affirmed.

[¶40] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

13